1

2

The Honorable Benjamin Settle

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
                                        AT TACOMA
9

10   PAULINE DICKMAN, individually and as a
     class representative,

11                                                      No. 3:15-cv-05193-BHS
                    Plaintiff,
12                                                      **DEFENDANTS' MOTION TO
            v.                                          DISMISS PURSUANT TO
13                                                      FED. R. CIV. P. 12(B)(6)**
     MULTICARE HEALTH SYSTEM, a
14   Washington nonprofit corporation, IOD, INC., a     NOTE ON MOTION CALENDAR:
     Wisconsin corporation,                             May 1, 2015
15
                    Defendants.
16

17                              I.      INTRODUCTION

18          Last November, the Washington Law Center—plaintiff's counsel in this putative class

19   action—requested the medical records of plaintiff Pauline Dickman for use in a personal injury

20   lawsuit.  The following day, IOD, the company responsible for responding to records requests

21   to Tacoma General Hospital (a facility operated by MultiCare Health System), notified the

22   Washington Law Center of the charges for the records under Washington's Uniform Health

23   Care Information Act (the "WUHCIA"), and more specifically Section 246-08-400 of the

24   Washington Administrative Code, which defines the "reasonable fee" that may be charged for

25   producing such records.

26          On February 26, the Washington Law Center filed this lawsuit against IOD and

27   MultiCare ("Defendants"), alleging that the charges outlined by IOD constituted a violation of

MOTION TO DISMISS COMPLAINT (3:15-cv-05193-BHS) - 1
DWT 26474090v9 0094753-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

the "Privacy Rule" enacted pursuant to the Health Insurance Portability and Accountability Act ("HIPAA").  Plaintiff's theory is that by charging the "reasonable fees" established by the WUHCIA to the attorneys at the Washington Law Center, Defendants violated *federal* law concerning what can be charged to patients, and are thus liable under the Washington Consumer Protection Act and state tort law.  On the same basis—a violation of the federal Privacy Rule—plaintiff claims that MultiCare was negligent.

Plaintiff's claims should be dismissed for the following reasons:

- ***First*** and foremost, IOD's quotation of the "reasonable fees" established by Washington law to the Washington Law Center did not violate HIPAA.  HIPAA establishes the charges to be assessed to "individuals" and their "personal representatives," a narrowly defined class of persons which, according to the Department of Health and Human Services, ***does not include*** "legal representatives" or "attorneys . . . that have the individual's authorization." 65 Fed. Reg. 82,492 (Dec. 28, 2000) (to be codified at 45 C.F.R. pt. 160 and 164); 67 Fed. Reg. 53,254 (Aug. 13, 2002) (to be codified at 45 C.F.R. pt. 160 and 164).  When a records request is made by a patient's attorney, HIPAA defers to state law for the appropriate charges; IOD's response to the Washington Law Center's request was fully compliant with Washington law, and the firm's attempt to bootstrap a consumer protection claim from its own records request fails as a matter of law.

- ***Second***, even if the Court were to conclude that WUHCIA-compliant charges quoted to the Washington Law Center were too high, plaintiff cannot state a derivative claim under the CPA.  The Washington legislature has determined that charging unreasonable fees for producing medical records "shall not be

deemed a violation of the consumer protection act, chapter 19.86 RCW." RCW 70.02.170(4).  State-endorsed charges do not become actionable under state law by virtue of plaintiff's invocation of a supposed federal standard for producing the same records, particularly where the Legislature has said that no such claim exists.

Regardless of whether Washington Law Center's actions were intentional or simply based on a misunderstanding of the "Privacy Rule," its request that Defendants "furnish [Washington Law Center]" with plaintiff's health care information based on "a properly executed authorization" from plaintiff does not support a claim on the well-pleaded facts of this case.  Exhibit A to the Declaration of Amy Derlink at 3 of 5.

## II.      STATEMENT OF FACTS

The following facts are derived entirely from (a) the Complaint filed in Pierce County Superior Court and removed to this Court on or about April 1, 2015 (the "Complaint")[1] and (b) the five-page fax from the Washington Law Center requesting plaintiff's health records ("Medical Records Request"), which—though curiously omitted from the exhibits to the Complaint—is specifically referenced in the Complaint.  Exhibit A to the Declaration of Amy Derlink.

Although one would not know it from reading the Complaint, the Medical Records Request that is the subject of this suit was made by plaintiff's litigation counsel, not Ms. Dickman.  On November 13, 2014, Lindsey Colon of the Washington Law Center (the "Law Center") sent a five-page fax to IOD requesting the medical records of Pauline Dickman, a client whom the Law Center was representing in an unrelated personal injury action. The fax cover sheet states:  "Please find enclosed request for Records & Bills as well as Authorization for Release of Information."  Medical Records Request at 1 of 5.  The fax included two letters

---

[1] A copy of the complaint is attached hereto for the Court's reference.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

on Law Center letterhead, each signed by the Law Center, requesting that records be provided to the Law Center.

The first letter stated that the Law Center would pay a "cost-based fee," and requested that IOD fax it a pre-bill before furnishing the records. *Id*. at 3 of 5. The letter indicated that "a properly executed authorization" signed by the patient authorizing IOD to share the records with the Law Center was enclosed. *Id*. The bottom of the first letter contained an additional authorization from plaintiff that read: "I, Pauline Dickman, am a client of Washington Law Center, PLLC, and expressly authorize and direct that the records described above be provided to my attorney in the manner requested." *Id*.

The second letter from the Law Center, page 4 of the fax, asked that Dickman's health records be sent directly to the Law Center within 15 days pursuant to the requirements set forth under Washington's Uniform Health Care Information Act, RCW Chapter 70.02.080. *Id*. Specifically, in the second letter, the Law Center advised:

> We represent Pauline Dickman for a claim for injuries sustained in an accident, which occurred on the above-referenced date. In order to facilitate our analysis of Pauline Dickman's claim, please provide this office with a complete copy of the patient's file, including, but not limited to all medical records, chart notes and a complete itemized statement including ICD-9 and CPT coding for services rendered relating to the above-referenced accident for treatment pertaining to the above-referenced patient from July 8, 2009 to the present. Enclosed you will find authorization for disclosure of the requested medical information.

*Id*. at 4 of 5. The referenced authorization from plaintiff, which is found on page 5 of the fax, confirmed that the disclosure in this case was intended for the Law Center, identifying the purpose of the disclosure as "Attorney" rather than "Insurance" or "Doctor" or "Personal." *Id*.

The next day, November 14, 2014, IOD responded to Ms. Colon, advising the Law Center that IOD had been retained by the medical facility to provide the requested medical records. Complaint, Ex. 2. As requested, IOD included a PrePay Notice setting forth the expected charges to the Law Center for complying with the Law Center's Medical Records Request. *Id*. Specifically, IOD informed the Law Center that it would be charged a $24.00

MOTION TO DISMISS COMPLAINT (3:15-cv-05193-BHS) - 4
DWT 26474090v9 0094753-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

clerical fee plus $1.09 per page for the first 30 pages, and $.82 per page for all remaining pages, *id.*, the fees established by the WUHCIA.   The PrePay Notice returned to the Law Center was not addressed to plaintiff, did not contemplate that the records were being released to plaintiff, and did not purport to quote fees to be charged to plaintiff.  *Id.*   The Law Center requested and was paying for records, with plaintiff's authorization.

Plaintiff filed this action on February 26, 2015, alleging that Defendants are liable for violating the Washington Consumer Protection Act, that MultiCare is liable for "negligence," and that she is entitled to declaratory and injunctive relief, both for herself and a putative class. All of these claims are based solely on plaintiff's contention that the charges quoted to the Law Center violated HIPAA, as amended by the Health Information Technology for Economic and Clinical Health Act ("HITECH"), and their implementing regulations.  Specifically, plaintiff alleges that the Medical Records Request in this case is subject to HIPAA regulations governing the release of protected health information to individual patients rather than third parties, such as attorneys representing patients.  Complaint, ¶¶ 4.7, 6.2, 6.7, 6.12.  She contends these alleged HIPAA violations are actionable under the Washington Consumer Protection Act and state law negligence theories.

## III.     ARGUMENT

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Conclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  The court should not assume the truth of legal conclusions in the complaint because such conclusions "are not entitled to the assumption of truth.  While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

In ruling on a motion to dismiss under Rule 12, the Court may consider a document that is not physically attached to the complaint if the document's "authenticity … is not contested"

and "the plaintiff's complaint necessarily relies" on the document. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006); *Dailey v. Washington*, 2012 WL 380272 at *2 n.5 (W.D. Wash. 2012); *Gaylean v. OneWest Bank FSB*, 2010 WL 5138396 at *2 (W.D. Wash. 2010). Here, the Medical Records Request submitted to IOD was created by plaintiff's counsel, and as a result, its authenticity cannot reasonably be challenged. The Complaint specifically references the Medical Records Request, *see* Complaint ¶ 4.7, and plaintiff's HIPAA violation theory necessarily relies upon its contents. As a result, the Medical Records Request may be properly considered in ruling on this motion.

Plaintiff's characterization of the Medical Records Request is of no legal consequence as the legal duties imposed by that document are for the Court to determine. *Johnson v. Kelso School Dist. No. 453*, 877 F.2d 64, 1989 WL 67105 at *2 (9th Cir. 1989) ("The construction of written instruments generally and a determination of the legal duties imposed by such instruments is a question of law for the trial court and not for the jury.") (internal quotations omitted). The document itself, not plaintiff's arguments as to its significance, controls for purposes of this motion. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). On this record, plaintiff has no claim against Defendants.

## A.      Defendants Did Not Violate HIPAA

The gravamen of plaintiff's Complaint is that the charges quoted to the Law Center in response to its request for plaintiff's medical records violate the regulations promulgated by the U.S. Department of Health and Human Services ("DHHS") under HIPAA. The alleged violation of federal law is a federal issue which is properly addressed by this Court. *See Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91, 100 (1972). In this case, Plaintiff is advocating an interpretation of HIPAA which is inconsistent with previous rulings by both the Ninth Circuit and DHHS, the agency charged with interpreting and enforcing HIPAA.

MOTION TO DISMISS COMPLAINT (3:15-cv-05193-BHS) - 6
DWT 26474090v9 0094753-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

The HIPAA fee limitations imposed by 45 C.F.R. § 164.524(c)(4) only apply to requests by individual patients, not those made by counsel.  This is controlling law in this circuit, as the Ninth Circuit held in 2007 that designated agents, such as attorneys, cannot claim the benefit of the fee limitations set forth in the regulation upon which plaintiff relies.  *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078 (9th Cir. 2007) (holding that law firm request for client's medical records was not subject to fee limitations under § 164.524(c)(4)). To the extent *Webb* left open the question of whether attorney requests authorized by a patient were subject to the rule, guidance from DHHS has resolved that issue.  Here, the Medical Records Request was made by counsel rather than the plaintiff herself, and it was counsel who was charged for those records.  IOD properly charged the Law Center the amounts authorized by statute in Washington, and the claims fail as a matter of law.

### 1.    45 C.F.R. § 164.524 Applies Only to Requests from Individual Patients

"HIPAA aims to improve the … efficiency and effectiveness of the health information system through the establishment of standards and requirements for the electronic transmission of certain health information."  *Webb*, 499 F.3d at 1083-84 (quoting HIPAA § 261, Pub. L. 104-191).  The statute authorizes DHHS to "adopt standards" consistent with these goals.  42 U.S.C. § 1320d-2.  With respect to protected health information, DHHS has determined that, except in limited circumstances, "an *individual* has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set" for a cost-based fee.  45 C.F.R. § 164.524(a)(1) (emphasis added).  The regulations specifically define "individual" as "the person who is the subject of the protected health information."  45 C.F.R. § 160.103.

When an "*individual* requests" her health records:

> [T]he covered entity may impose a reasonable, cost-based fee, provided that the fee includes only the cost of:

> (i) Labor for copying the protected health information requested by the *individual,* whether in paper or electronic form;

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

(ii) Supplies for creating the paper copy or electronic media if the *individual* requests that the electronic copy be provided on portable media;

(iii) Postage, when the *individual* has requested the copy, or the summary or explanation, be mailed; and

(iv) Preparing an explanation or summary of the protected health information, if agreed to by the *individual* as required by paragraph (c)(2)(iii) of this section.

45 C.F.R. § 164.524(c)(4) (emphasis added).

When interpreting federal regulations, "the plain meaning of a regulation governs." *Webb*, *supra*, 499 F.3d at 1084 (quoting *Safe Air for Everyone v. U.S. Envtl. Prot. Agency*, 488 F.3d 1088, 1097 (9th Cir. 2007)).  In this case, the regulatory text references the right of access and associated fees as a right belonging only to the individual who is the subject of the protected health information, not his or her counsel.  45 C.F.R. § 160.103.  Thus, the plain language of the regulation defeats plaintiff's claims because in this case, the Medical Records Request was made by the Washington Law Center, and the Law Center—not plaintiff—was billed for the records.[2]

Plaintiff cannot argue that DHHS intended to equate authorized requests by counsel with those of their clients, or that this distinction improperly elevates form over substance.  The regulations provide one specific situation in which individuals *other than* the patient may obtain medical records pursuant to § 164.524(c)(4).  Generally, entities subject to the fee provisions must "treat a personal representative as the individual for purposes of this subchapter … If under applicable law a person has authority to act on behalf of an individual who is an adult or an emancipated minor in making decisions related to health care…"  45 C.F.R. § 164.502(g)(1).  Under the canon of statutory interpretation *expressio unius est exclusio*

---

[2] 2013 amendments to 45 C.F.R. § 164.524(c)(3) allow individuals to direct that records be sent to a third party, which was "consistent with the Department's prior interpretation" allowing mailing to another address where the request was "clearly made by the individual and not a third party."  78 Fed. Reg.5,634-35 (Jan. 25, 2013).  The amendments made no change to the basic distinction between individual requests and those made by third parties. To the contrary, the amendments included express provisions designed to "make clear that business associates may continue to recoup fees from third party record requestors for preparing and transmitting records on behalf of a covered entity, to the extent such fees are reasonable, cost-based fees to cover the cost to prepare and transmit the protected health information or otherwise expressly permitted by other law."  78 Fed. Reg. 5,605-06.

MOTION TO DISMISS COMPLAINT (3:15-cv-05193-BHS) - 8
DWT 26474090v9 0094753-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*alterius*, "when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Webb*, 499 F.3d at 1084 (quoting *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005)).  DHHS extended the patient's right to personal representatives, but no one else.  The omission of other entities, such as attorneys who do not have authority to make health care decisions, indicates that DHHS did not intend for the fee limitations in § 164.524(c)(4) to apply to anything other than charges to individual patients or their personal representatives.

To the extent plaintiff's claims are not foreclosed by the plain language of the regulations upon which she relies, DHHS has consistently defined the scope of § 164.524(c)(4) in accordance with the language of the provision.[3]  Specifically, the regulatory history of the fee limitation provision demonstrates that DHHS did not intend for attorneys to benefit from the reduced fee that would be paid by a patient.  In the proposed rules, DHHS expressly considered a more expansive definition of "individual" that would have included "legal representatives." *See* 65 Fed. Reg. 82,492 (Dec. 28, 2000) (to be codified at 45 C.F.R. pt. 160 and 164) (summarized in final commentary).  However, in the final rule, DHHS "remove[d] from the definition of 'individual' the provisions regarding legal representatives," and noted that "[t]he circumstances in which a representative must be treated as an individual for purposes of this rule are addressed in a separate standard titled 'personal representatives.'" 65 Fed. Reg. 82,500.

The preamble commentary to § 164.524(c) flatly states that the fee provision does not apply to requests from anyone other than the individual, stating: "***We do not intend to affect the fees that covered entities charge for providing protected health information to anyone other than the individual*** …." 65 Fed. Reg. 82,557 (emphasis added).  In response to a public comment inquiring whether § 164.524(c)(4) applied to "others seeking copies of all or part of

---

[3] "The plain language of a regulation … will not control if 'clearly expressed administrative intent is to the contrary or if such plain meaning would lead to absurd results' … We invoke this exception to the plain meaning canon, however, only when 'some indication of the regulatory intent that overcomes plain language … [is] referenced in the published notices that accompanied the rulemaking process.'" *Webb*, supra, 499 F.3d at 1085 (internal quotation marks omitted).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   the medical record, such as payers, *attorneys*, or entities *that have the individual's*

2   *authorization*," the preamble commentary to the 2002 amendments to the Privacy Rule stated:

3   "[T]he rule, at *§ 164.524(c)(4), limits only the fees that may be charged to individuals, or to their personal representatives* in

4   accordance with § 164.502(g), when the request is to obtain a copy of protected health information about the individual in

5   accordance with the right of access. *The fee limitations in § 164.524(c)(4) do not apply to any other permissible*

6   *disclosures by the covered entity*....

7   67 Fed. Reg. 53,254 (Aug. 13, 2002) (to be codified at 45 C.F.R. pt. 160 and 164) (emphasis

8   added).

9          In short, the regulatory preambles and final commentary make abundantly clear that the

10  HIPAA fee limitations do not apply to the Medical Records Request made by the Law Center,

11  for which plaintiff was not being charged. *Thomas Jefferson Univ. v. Shalala*, 114 S.Ct. 2381,

12  2386(1994) (An "agency's interpretation [of a regulation] must be given 'controlling weight

13  unless it is plainly erroneous or inconsistent with the regulation.'"). As the Ninth Circuit

14  concluded in *Webb*, "[t]he final commentary and subsequent clarification extinguish any doubt

15  that the 'personal representative' category constitutes the only class of persons that may be

16  treated as the 'individual' [under § 164.524(c)(4)] other than the individuals themselves." 499

17  F.3d at 1086 (citing *Barnhart v. Peabody Coal Co.*, 123 S.Ct. 748 (2003) (holding that where

18  "it is fair to suppose that [the drafters] considered the unnamed possibility and meant to say no

19  to it," the courts should "read the enumeration of one case to exclude another")).

20         Plaintiff does not allege that Ms. Colon or the Law Center had authority to make health

21  care decisions for her, and the Medical Records Request does not in any way suggest this to be

22  the case. Instead, the Law Center is an entity excluded from the fee limitations imposed by

23  § 164.524(c)(4). As plaintiff's "legal representative," the Law Center was not entitled to

24  invoke the cost-based fee limitations, and plaintiff cannot assert a claim based on charges made

25  to the firm. Accordingly, the well-pled facts do not support the legal conclusions necessary to

26  sustain plaintiff's Complaint—namely, that Defendants violated § 164.524(c)(4)—and, as a

27  result, plaintiff's Complaint is properly dismissed under Rule 12(b)(6).

MOTION TO DISMISS COMPLAINT (3:15-cv-05193-BHS) - 10
DWT 26474090v9 0094753-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## 2. The Medical Records Request Cannot Be Classified as an "Individual" Request

Plaintiff may argue that while attorneys are not entitled to reduced fees, the Law Center is entitled to claim HIPAA's cost-based fee limitation because she authorized and signed off on the Law Center's request for her records.  Such an argument improperly conflates a patient request with authorization for a third-party request.  This too is precluded by DHHS's interpretation of its own rules.

Third-party requests must be accompanied by a HIPAA-compliant authorization which DHHS has specifically identified as distinct from written requests from individuals designating third party recipients of their medical records. § 164.524(c)(3).  Third-party requests require a valid patient authorization, which includes:

> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
>
> (ii) The name or other specific identification of the person(s) … authorized to make the requested use or disclosure.
>
> (iii) The name or other specific identification of the person(s) … to whom the covered entity may make the requested use or disclosure.
>
> (iv) A description of each purpose of the requested use or disclosure….
>
> (v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure….
>
> (vi) Signature of the individual and date…

45 C.F.R. § 164.508(c)(1).  The final commentary regarding the above provision confirms that this rule applies to attorney requests, stating that "[i]f the attorney [of an individual] is not the personal representative under the rule … the individual would have to authorize such disclosure." 65 Fed. Reg. 82,651.  The Law Center understands this well, which is the reason that it called out and supplied a "properly executed authorization permitting [Defendants] to furnish [the Law Center] with this information."  Medical Records Request at p. 3 of 5.   If it were otherwise, and valid patient authorization were deemed to constitute an "individual"

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

request, there would effectively be no third-party requests, and the HIPAA regulations allowing entities to charge third party requestors under state law would be rendered meaningless.

From the beginning, § 164.524(c)(4) has been defined to exclude disclosures made pursuant to valid patient authorization under § 164.508(c)(1).  In response to public comment asking whether the fee limitations applied to attorneys, DHHS stated:

> The Department clarifies that the Rule, at § 164.524(c)(4), **limits only the fees that may be charged to individuals, or to their personal representatives** … The fee limitations in § 164.524(c)(4) do not apply to any other permissible disclosure by the covered entity, including disclosures that are permitted for treatment, payment for health care operations, **disclosures that are based on an individual's authorization that is valid under § 164.508,** or other disclosures permitted without the individual's authorization as specified in § 164.512.

67 Fed. Reg. 53,254 (emphasis added).  There is no way to fairly characterize the Medical Records Request by the Law Center as anything other than a third-party request coupled with HIPAA-compliant patient authorization, which is the way it was presented by the Law Center itself.

### 3.   HIPAA Authorizes Defendants to Charge Copying Fees Set Forth Under State Law to the Washington Law Center

In 2000, DHHS responded to comments regarding the scope of permissible fees and indicated that HIPAA's Privacy Rule did not preempt fee schedules established under state law. 65 Fed. Reg. 82,735 ("The rule limits the types of costs that may be imposed for providing access to protected health information, but does not preempt applicable state laws regarding specific allowable fees for such costs.").  The 2013 amendments to the Privacy Rule reaffirmed that state fee schedules continue to apply to third-party requests for medical records authorized by the patient.  *See* 78 Fed. Reg. 5,607 ("With respect to the types of costs that would be permitted as part of a reasonable, cost-based fee under this provision, we clarify that the final rule permits … costs that are in compliance with a fee schedule provided by State law….").  Accordingly, because the Medical Records Request was a third-party request, Defendants were allowed to charge the Law Center the fees established by Washington law.  Under the

MOTION TO DISMISS COMPLAINT (3:15-cv-05193-BHS) - 12
DWT 26474090v9 0094753-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

WUHCIA, a health care facility may charge a reasonable fee for providing health information. RCW 70.02.030(2).  Determination of a "reasonable fee" is adjusted biennially, RCW 70.02.010(37), and set forth in Wash. Admin. Code § 246-08-400.  Currently, the charges may not exceed:

> (1) Copying charge per page:
>
>> (a) No more than one dollar and nine cents per page for the first thirty pages;
>>
>> (b) No more than eighty-two cents per page for all other pages.
>
> (2) Additional charges:
>
>> (a) The provider can charge a twenty-four dollar clerical fee for searching and handling records ….

WAC 246-08-400.  As set forth in the PrePay Notice that IOD provided to the Law Center in advance of disclosing the records, *see* Compl., Ex. 2,  IOD fully complied with the Washington fee schedule, proposing to charge a $24.00 basic fee and $1.09 per page for copying the first 30 pages and $.82 per page for all pages thereafter.

In charging the Law Center, a third-party record requestor, for preparing and transmitting medical records pursuant to the fee schedule established by Washington law, Defendants complied fully with the law.  Accordingly, plaintiff has no possible basis to allege a violation of HIPAA based on the fees charged by Defendants to the Washington Law Center for disclosure of plaintiff's medical records.

### 4.   Plaintiff's Claims Fail as a Matter of Law Because Defendants Did Not Violate HIPAA

As the preceding sections demonstrate, Defendants did not violate HIPAA in charging the fees set by the Washington Department of Health.  Without the predicate showing of a violation, plaintiff's claims, including her negligence claim, fail as a matter of law.

First, the CPA exempts actions permitted by any regulatory body acting under the statutory authority of the state or of the United States.  RCW 19.86.170.  The HIPAA regulations specifically allow defendants to impose charges otherwise allowed by law on third

parties such as the Law Center, and the charges were fully compliant with state law.  In this case, the action complained of—charging a third party the rates established in WAC 246-08-400—is both permitted by regulations enacted by DHHS and the law of the State of Washington.  As a result, plaintiff's CPA claim cannot survive a motion to dismiss.  *See Denton v. Dep't Stores Nat. Bank*, 2011 WL 3298890, at *4 (W.D. Wash. Aug. 1, 2011) (dismissing CPA claim arising from conduct permitted by OCC regulations).

Second, in order to prevail on a claim for negligence against MultiCare, plaintiff must establish (1) a legal duty owed by MultiCare to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff proximately caused by the breach, and (4) damages.  *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998).  The existence of a legal duty is a question of law, *id.*, and here, MultiCare had no duty to charge the Law Center anything other than the rates imposed by the WUHCIA.

Finally, plaintiff's claim for declaratory relief fails because "[t]o obtain declaratory relief, Plaintiffs must first adequately state an underlying claim."  *Young v. Northwest Trustee Services Inc.*, 2015 WL 1062047, at *5 (W.D. Wash. March 11, 2015).  Because plaintiff cannot state a CPA or negligence claim, she is not entitled to declaratory relief.  *Id.*  Given that the defendants have not violated HIPAA, a judicial declaration would be futile under the circumstances.

### B.   Even If Plaintiff Could Establish a Violation of HIPAA, Washington Law Bars CPA Claims Arising from the Alleged Misconduct

Even if the fees charged by IOD were in violation of HIPAA regulations (which they were not), such a violation would not support a CPA claim against Defendants.  It is well established that there is no private right of action under HIPAA.  *Webb*, 499 F.3d at 1082; *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010) (HIPAA provides no private right of action); *Grant v. Alperovich*, 993 F. Supp.2d 1356, 1366 (W.D. Wash. 2014) (no private right of action under HIPAA); 65 Fed. Reg. 82,600-82,601 (Dec. 28, 2000) ("[u]nder HIPAA, individuals do not have a right to court action.").  However, many states, including

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Washington, have statutorily-created rights of action that similarly establish standards and requirements for the production of patients' health records.  In Washington, this effort predates HIPAA, when the state legislature recognized the lack of "comprehensive statutory law governing the rights and responsibilities of patients and health providers with regard to the confidentiality of patients' health records, and the conditions or situations under which those records can be disclosed."  H. B. Rep. 1828 (Wash. 1991) (as amended by the Senate).  The result was the WUHCIA, which provides "uniform law, rules, and procedures governing the use and disclosure of health care information."  RCW 70.02.005.

In keeping with its purpose, the WUHCIA comprehensively regulates the disclosure of health care records in Washington.  With respect to billing, health care providers and facilities may charge a reasonable fee for producing health records.  RCW 70.02.030.  Determination of the "reasonable fee" is adjusted biennially in accordance with changes in the consumer price index, as set forth in Section 246-08-400 of the Washington Administrative Code.  *See* RCW 70.02.010(37).  As detailed in the preceding sections, currently health care providers may charge $1.09 per page for copying the first 30 pages and $.82 per page for all remaining pages.  WAC 246-08-400(1).  Providers may also include a $24.00 clerical fee for searching and handling records.  WAC 246-08-400(2).  The Washington regulations direct HIPAA-covered entities to refer to HIPAA regulation 45 C.F.R. 164.524(c)(4), which, of course, limits fees that may be charged to patients.  WAC 246-08-400(4).

While the WUHCIA provides a private right of action, allowing individuals to recover actual damages and attorneys' fees for violations of the state Act, ***it expressly forecloses CPA claims***.  RCW 70.02.170.  Specifically, the Act states that "[a] violation of this chapter ***shall not*** be deemed a violation of the consumer protection act, chapter 19.86 RCW."  RCW 70.02.170(4) (emphasis added).  In other words, RCW 70.02.170(4) reflects the legislature's intent to place claims arising from overbilling for production of health records outside of the Consumer Protection Act.  *See Svendsen v. Stock*, 143 Wn.2d 546, 554-55, 23 P.3d 455 (2001) (holding that statutory provision stating that "the practices covered by this chapter are not

MOTION TO DISMISS COMPLAINT (3:15-cv-05193-BHS) - 15
DWT 26474090v9 0094753-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

matters vitally affecting the public interest for the purpose of applying the consumer protection act" reflects legislative intent to bar CPA liability arising from the stated practices).

Where the legislature has spoken, plaintiff is barred from asserting a CPA claim against Defendants. *State v. Schwab*, 103 Wn.2d 542, 552, 696 P.2d 108, 113 (1985) (CPA is not applicable where the legislature has "clearly evinced its intent that designated activities not be covered by the Consumer Protection Act."). For example, in *Schwab*, the State filed a complaint for injunctive and additional relief under the CPA against a landlord following complaints by tenants, contending that the CPA was an available mechanism for enforcing tenants' rights as defined under the Residential Landlord-Tenant Act ("RLTA"). *Id.* at 548. In ultimately determining that violations of RLTA do not constitute violations of the CPA, the Court reasoned that "the respective rights and duties of residential tenants and landlords are spelled out in great detail, and an array of specific remedies provided for violations thereof, in a single comprehensive enactment, the [RLTA]." *Id.* at 550. In addition, the Court noted that the legislature rejected an amendment to extend the CPA to violations of RLTA. *Id.* at 551-52. Recognizing the Court's "duty … to ascertain and give effect to the intent and purposes of the legislature as expressed in its enactments," the Court held that residential landlord tenant disputes fall within the exclusive purview of RLTA, rather than the CPA.

The same reasoning applies here, only with more force given the explicit statutory *exclusion*. The respective rights and duties of patients and health care providers and their agents with respect to charges for medical records are set forth in great detail in the Uniform Health Care Information Act, with specific civil remedies provided for violations thereof. The Legislature elected to bar individuals from bringing CPA claims for alleged violations of the Act. RCW 70.02.170(4). As a result, given the clearly expressed legislative intent, the CPA is inapplicable and does not support plaintiff's claim. *Schwab*, *supra*, 103 Wn.2d at 552; *see also Gamble v. Pac. Nw. Reg'l Council of Carpenters*, 2015 WL 402782, at *7 (W.D. Wash. Jan 29, 2015) (dismissing CPA claim arising from alleged unfair and deceptive practices during the scope of employment on the ground that the "Washington legislature has specifically excluded

1  practices 'committed by an employer against an employee or a prospective employee' from the

2  scope of the CPA.") (internal quotation marks omitted).  It would be nonsensical for plaintiff to

3  have a CPA claim for excessive charges under federal law when the state does not provide such

4  a remedy for violations of its own caps.  Accordingly, even if plaintiff could establish that

5  Defendants improperly charged the Law Center for its Medical Records Request (which she

6  cannot), her CPA claim fails as a matter of law, and must be dismissed.

7                              **IV.    CONCLUSION**

8          The Washington Law Center requested plaintiff's records for use in litigation. The

9  Washington Law Center—*not Pauline Dickman*—was charged "reasonable fees" for those

10  records under the applicable state law.  Defendants did not violate HIPAA, which—according

11  to DHHS—"limits only the fees that may be charged to individuals, or to their personal

12  representatives."  Authorizing another to obtain records is not, and never has been, an

13  individual request, and Defendants did not violate federal law in responding to the Law

14  Center's fax.  Even if HIPAA applied and called for a lower rate, there is no CPA claim

15  available against providers who are alleged to have charged too much.

16          DATED this 8th day of April, 2015.

17                                      Davis Wright Tremaine LLP
                                        Attorneys for Defendant IOD, Inc.
18

19                                      By *s/ Brad Fisher*_____
                                           Brad Fisher, WSBA #19895
20                                         Samantha Funk, WSBA #43341
                                           1201 Third Avenue, Suite 2200
21                                         Seattle, WA  98101-3045
                                           Telephone: (206) 622-3150
22                                         Fax: (206) 757-7700
                                           E-mail: bradfisher@dwt.com
23                                         E-mail: samanthafunk@dwt.com

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Bennett Bigelow & Leedom ,P.S.
Attorneys for Defendant MultiCare Health
System


By *s/ Michael Madden*
    Michael Madden, WSBA #8747
    Amy Magnano, WSBA #38484
    601 Union Street, Suite 1500
    Seattle, WA  98101-1363
    E-mail: mmadden@bbllw.com
    E-mail: amagnano@bbllaw.com

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1
2

<u>CERTIFICATE OF ELECTRONIC FILING & SERVICE</u>

3      I hereby certify that on April 8, 2015, I electronically filed the foregoing with the Clerk

4  of the Court using the CM/ECF system which will send notification of such filing to the

5  following:

6      Michael Madden          mmadden@bbllaw.com, ecf@bbllaw.com, gdowns@bbllaw.com
7
       Loren A Cochran         loren@pcvalaw.com, Ksnyder@pcvalaw.com,
8                              Laura@pcvalaw.com
9
       Amy M Magnano           amagnano@bbllaw.com, ecf@bbllaw.com,
10                             lyniguez@bbllaw.com
11     Ashton Keith Dennis     ashton@washingtonlawcenter.com,
                               jennifer@washingtonlawcenter.com
12

13     DATED this 8th day of April, 2015.

14
15                                      Davis Wright Tremaine LLP
                                        Attorneys for Defendant IOD, Inc.
16

17                                      By *s/ Brad Fisher*_____
                                           Brad Fisher, WSBA #19895
18

19
20
21
22
23
24
25
26
27

MOTION TO DISMISS COMPLAINT (3:15-cv-05193-BHS) - 19
DWT 26474090v9 0094753-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# State Court Complaint

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

February 26 2015 2:27 PM

KEVIN STOCK
COUNTY CLERK
NO: 15-2-06366-4

1

2

3

4

5

6

7

8

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE

9    PAULINE DICKMAN, individually and as a
     class representative,

10              Plaintiffs,                          CLASS ACTION

11        vs.                                        NO.

12   MULTICARE HEALTH SYSTEM, a                      COMPLAINT FOR DAMAGES AND
     Washington nonprofit corporation, IOD, INC.,    DECLARATORY AND INJUNCTIVE
13   a Wisconsin corporation,                        RELIEF

14              Defendants.

15                              I.    INTRODUCTION

16        1.1    The Federal Standards for Privacy of Individually Identifiable Health Information

17   and/or the Security for the Protection of Electronically Protected Health Information (45 C.F.R.

18   Parts 160 and 164, Subparts A, C and E, the Privacy and Security Rules), state that an individual

19   has the right to access his/her protected health information (PHI), maintained by a covered entity

20   in a designated record set, for as long as the PHI is maintained in the designated record set (e.g.

21   medical or billing records).  *See* 45 C.F.R. § 164.524.(a)(1).  If an individual requests an electronic

22   copy of that PHI, except under certain circumstances, a covered entity is required to provide the

23   individual with such electronic copy to the extent it is readily producible.  *See* 45 C.F.R §

24

CLASS ACTION COMPLAINT                          WASHINGTON LAW CENTER, PLLC
FOR DAMAGES                                            15 Oregon Ave., Suite 210
Page 1 of 13                                            Tacoma, WA  98409
                                              (253) 476-2653 | (253) 476-2298 fax

1  164.(C)(2)(i) and (ii).  A covered entity must act on the individual's request for access no later

2  than 30 days after it receives the request.  *See* 45 C.F.R. § 164.524(b)(2).

3    The Privacy Rule permits the covered entity to impose reasonable, cost-based fees to

4  provide individuals (or personal representatives) with access to their PHI.  The fee may include

5  only the cost of copying (including supplies and labor) and postage, if the patient requests that the

6  copy be mailed.  If the patient has agreed to receive a summary or explanation of his or her

7  protected health information, the covered entity may also charge a fee for preparation of the

8  summary or explanation.  The fee may not include costs associated with searching for and

9  retrieving the requested information.  See 45 C.F.R § 164.524(c)(4).

10    Additionally, if an individual's request for access directs the covered entity to transmit the

11  copy of PHI directly to another person designated by the individual, the covered entity must

12  provide the copy to the person designated by the individual.  The individual's request must be in

13  writing, signed by the individual, and clearly identify the designated person and where to send the

14  copy of the PHI.  See 45 C.F.R. § 164.524(c)(3)(ii).

15    1.2 Defendant MultiCare Health Systems ("MultiCare") provided medical services to

16  individuals in the Puget Sound area and have engaged in contract with Defendant IOD, Inc.,

17  ("IOD") to manage, maintain and produce records pursuant to patients' medical records and

18  billing requests.

19    1.3. Defendant IOD claims to be, "people, technology and ideas that combine a proven

20  approach with creativity and flexibility to deliver a competitive advantage that reaches from the

21  front office to your ***bottom line***."  Defendant IOD acts as an agent for MultiCare when producing

22  records for patients when they request their records and bills.

23

24

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 2 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA  98409
(253) 476-2653 | (253) 476-2298 fax

22

1    1.4    Defendant IOD is well aware of the federal regulations outlined in paragraph 1.1

2  and has been advised as such by the Department of Health & Human Services.[1] Yet, Defendant

3  IOD, as an agent for both MultiCare, continues to violate the federal regulations and disregard the

4  patients' requests to produce records pursuant to federal law.

5    1.5    It is believed that there are hundreds of individuals that have requested medical

6  bills, health information, records and PHI from IOD via the federal regulations set forth in

7  paragraph 1.1 and it has blatantly disregarded those regulations and continued to charge excess

8  amounts for the records to "deliver a competitive advantage" for its clients MultiCare, which

9  impacts the "bottom line".

10    **II.    PARTIES**

11    2.1    Plaintiff and Class Representative Pauline Dickman is a resident of Pierce County,

12  Washington.

13    2.2    At all times material hereto, Defendant MultiCare Health System is a non-profit

14  corporation duly authorized and licensed by the State of Washington to operate healthcare

15  facilities and provide healthcare services.  Its state of incorporation is Washington.

16    2.3    Defendant IOD, Inc., is a for-profit corporation duly authorized and licensed by the

17  state of Washington.  Its state of incorporation is Wisconsin.

18    **III.    JURISDICTION AND VENUE**

19    3.1    A substantial amount of the acts giving rise to this complaint occurred in Pierce

20  County, Washington.

21    3.2    Plaintiff Pauline Dickman is a resident of Pierce County, Washington.

22

23

24  [1] *See* Exhibit 1.

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 3 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA  98409
(253) 476-2653 | (253) 476-2298 fax

1    3.3    Defendant MultiCare is a Washington Corporation which regularly transacts

2  business in Pierce County, Washington and King County, Washington.

3    3.4    Defendant MultiCare's headquarters and its principal place of business were, and

4  currently are, in Tacoma, Pierce County, Washington.

5    3.5    The acts giving rise to this complaint occurred in Pierce County, Washington and

6  King County, Washington.

7    3.6    As such, this Court has jurisdiction over this matter pursuant to the State

8  Constitution Art. 4 § 6 and RCW 2.08.010, and venue is proper in this Court pursuant to RCW

9  4.12.020 and 4.12.025.

10    **IV.    FACTS**

11  *Statement of the Case*

12    4.1    The plaintiffs herein properly requested medical records and/or information and/or

13  bills and/or records and/or protected health information (PHI) pursuant to See 41 U.S.C.A. §

14  17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002) from IOD, Inc., who was acting as an agent

15  for MultiCare.

16    4.2    IOD, Inc., was aware that The Privacy Rule permits the covered entity [MultiCare

17  via IOD] to impose reasonable, cost-based fees to provide individuals (or personal representatives)

18  with access to their PHI.  The fee may include only the cost of copying (including supplies and

19  labor) and postage, if the patient requests that the copy be mailed.

20    4.3    The Federal Government had notified IOD that it had violated this regulation in the

21  past.  IOD advised the Federal Government it would make changes and not overcharge individuals

22  in the future.

23    4.4    IOD receives requests similar to those submitted by the class representatives on a

24  daily basis.

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 4 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA  98409
(253) 476-2653 | (253) 476-2298 fax

24

1    4.5    IOD is well aware that it is unable to charge individuals for records on a per page

2  basis when it receives requests similar to those submitted by the plaintiffs in this case; however,

3  continually does so in an attempt to increase profits for itself and for MultiCare.

4    4.6    This practice of knowingly failing to follow a patient's request and federal

5  regulations is a wrongful and deceptive practice.  This practice is also negligent.  The plaintiffs

6  herein have been irreparably harmed because of these practices.

7  ***Plaintiff and Class Representative Pauline Dickman***

8    4.7    Mrs. Pauline Dickman is an individual.   On or about November 13, 2014, she

9  requested records pursuant to U.S.C.A. § 17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002)

10  from IOD, Inc., for care rendered at a MultiCare facility.  Mrs. Dickman requested her records be

11  provided digitally.

12    4.8    IOD as an agent for MultiCare failed to comply with the federal regulations that it

13  was well aware of and tried to charge Mrs. Dickman an excessive amount of money for her

14  medical records and bills.[2]  IOD attempted to charge on a per-page basis which is an unauthorized

15  practice pursuant to the regulation.  A complaint was lodged with MultiCare's agent, IOD,

16  outlining that the fees were in excess of those permitted.  In response another excessive bill was

17  sent.[3]

18    4.9    IOD as an agent for MultiCare charged Mrs. Dickman for her records on a per-page

19  basis instead of based on "only the cost of copying (including supplies and labor) and postage, if

20  the patient request that the copy be mailed."

21

22

23  [2] *See* Exhibit 2

24  [3] *See* Exhibit 3

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 5 of 13

25

4.10   IOD charged Mrs. Dickman $488.93 for records on a per-page basis. This fee is far in excess which should have been paid pursuant to U.S.C.A. § 17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002).

4.11   On December 12, 2014, IOD delivered Mrs. Dickman a CD with the records on it which cost $488.93.

4.12   Mrs. Dickman suffered a monetary loss as a result of the wrongful practices.

4.13   Mrs. Dickman also falls within the class injured by MultiCare's wrongful practices.

## V.   CLASS ALLEGATIONS

5.1   Plaintiffs bring this action on behalf of themselves and the class pursuant to CR 23.

5.2   **Class Definition:** Plaintiffs propose the following class definition:

a.      **Damages Class A** - Subjected to IOD's Wrongful Billing Practice on Behalf of MultiCare and Have Paid the Improperly Billed Amount. All persons in the State of Washington: (1) who have requested health information pursuant to U.S.C.A. § 17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002); (2) who were improperly and wrongfully charged, (3) and paid IOD and/or MultiCare the improperly and wrongfully billed amount.

b.      **Declaratory Relief Class A** – Subjected to IOD's Wrongful and Improper Billing Practice Pursuant to U.S.C.A. § 17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002). All Persons in the State of Washington:   All persons in the State of Washington: (1) who have requested health information pursuant to U.S.C.A. § 17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002); (2) who were improperly and wrongfully charged, (3) and paid IOD and/or MultiCare the improperly and wrongfully billed amount.

5.3   **Numerosity:** Plaintiffs' proposed class and sub-classes, as defined by CR 23(b), consist of likely hundreds, if not thousands, of persons who have requested health information

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 6 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA  98409
(253) 476-2653 | (253) 476-2298 fax

from IOD as an agent from MultiCare pursuant to U.S.C.A. § 17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002); and who have been subjected to Defendants' improper billing practices.  As such, the class is so numerous that joinder of all members is impractical.

5.4    **Typicality:**  The plaintiffs' claims and/or defenses are typical of the claims and/or defenses of the class in that the other class members have suffered and will continue to suffer property loss, including but not limited to, loss of monies, due to IOD and/or MultiCare's record billing practices.

5.5    **Named Class Members Identifiable.**  Class members can be identified, upon information and belief, through MultiCare's and IOD's records requests and/or information in MultiCare's, and/or IOD's possession or control of health care record requests pursuant to the mentioned statutes.

5.6    **Adequacy of Representation:**  The plaintiffs will fairly and adequately protect the class because (1) plaintiffs have retained counsel that is competent and experienced in the prosecution of such litigation, (2) plaintiffs and their counsel are aware of no conflicts of interest between plaintiffs and absent class members or otherwise; and (3) plaintiffs are knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this litigation.

5.7    This lawsuit involves questions of law and fact that are common to the class.

5.8    **Common Questions of Law and Fact:**  Questions of law and fact which are common to the class with respect to the claims against Defendants predominate over any individual questions.  Among such questions of law and fact are:

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 7 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA  98409
(253) 476-2653 | (253) 476-2298 fax

A. Whether Defendants MultiCare and/or IOD health care information production protocols violate the Consumer Protection Act of the State of Washington and/or the consumer statute of various states, by violating well known federal laws.

B. Whether Defendants MultiCare and/or IOD health care information production protocols violate the Consumer Protection Act of the State of Washington and/or the consumer statute of various states, by continually overcharging individuals although it has been told by the federal government to stop its unlawful practice.

5.9    There is a community of interest among the Class Members in obtaining appropriate compensatory damages and declaratory relief.

5.10   **Superiority:**  A class action provides a fair and efficient method for adjudicating this controversy and is superior to the other methods of adjudication in that (1) neither the size of the class, nor any other factor, make it likely that difficulties will be encountered in the management of this action as a class action; (2) the prosecution of separate actions by individual class members, or the individual joinders of all class members in this action is impracticable and would create a massive and unnecessary burden on the resources of courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each member of the class, (3) because of the disparity of resources available to defendants versus those available to individual class members, prosecution of separate actions would work a financial hardship on many class members and (4) the conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each member of the class and meets all due process requirements as to fairness to all parties.  A class action is also superior to maintenance of these claims on a claim by claim basis when all

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 8 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA  98409
(253) 476-2653 | (253) 476-2298 fax

actions arise out of the same circumstances and course of conduct.

5.11   **Individual Prosecution Unlikely and Unreasonable.**   Plaintiffs and their counsel are not aware of any interest that members of the class would have in individually controlling the prosecution of separate actions, especially given the size of each individual claim, and the cost, expense and difficulty of litigating against defendants.   Plaintiffs and their counsel are also not aware of any actions already commenced on behalf of the class members alleging similar claims or seeking similar relief.   Given the similar nature of the class members' claims and the absence of material differences in the state statutes and common law doctrine upon which the class members' claims are based (should Washington law not solely apply), a class action should be managed by this court.   A significant economy of scale exists in concentrating the litigation in this forum.

5.12   The proposed class fulfills the certification criteria of CR 23(a), and certification of the above defined class is appropriate under the provision of CR 23(b).

## VI.   CAUSES OF ACTION

**A. Declaratory and Injunctive Relief Against MultiCare and IOD**

6.1 Plaintiffs re-allege the paragraphs set forth above and below.

6.2 Plaintiffs seek a judicial declaration that Defendants MultiCare and IOD health care information, including records and bills, producing practices violate Washington law. Specifically, Plaintiffs seek an order from the Court enjoining Defendants MultiCare from retaining third-party producer IOD to bill, collect, invoice, deceive or otherwise violate U.S.C.A. § 17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002) when a person requests health care information pursuant to the act.

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 9 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA 98409
(253) 476-2653 | (253) 476-2298 fax

**B. Consumer Protection Act Against MultiCare and IOD**

6.3     Plaintiffs re-allege the paragraphs set forth above and below.

6.4     RCW 19.86.02 defines unfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce to be unlawful

6.5     Doctors may be sued for consumer protection violations when suit is based on his entrepreneurial activities, as such activities are not "health care" within meaning of statute governing procedural and substantive aspects of actions for damages for injury occurring as result of health care. *Wright v. Jeckle*, 104 Wash.App. 478, 16 P.3d 1268, (2001) amended on reconsideration in part, review denied 144 Wash.2d 1011, 31 P.3d 1185.

6.7     Plaintiffs and the proposed class members suffered requested health related information pursuant to U.S.C.A. § 17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002) from MultiCare or IOD.  The Defendants disregarded the requirements of the Act which is a deceptive and unlawful practice and attempted to increase the "bottom line" of their companies.  MultiCare, and IOD would not produce health related information to the plaintiffs and class members unless they paid the unlawfully inflated and improper invoices.

6.8     The acts and omissions of defendants MultiCare and IOD as described herein, and as will be further developed in discovery, were and are unfair and deceptive acts or practices in trade and commerce, and affect the public interest. As such, the acts and omissions of MultiCare, IOD as described herein, and as will be further developed in discovery, are in violation of Washington's Consumer Protection Act, RCW 19.86 *et seq*., entitling the plaintiffs and class members to treble damages, reasonable attorneys' fees, costs of suit, and such other relief as may be permitted by statute.

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 10 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA  98409
(253) 476-2653 | (253) 476-2298 fax

1        6.9      Defendants', MultiCare and IOD, unlawful and improper health care production

2   practices directly and proximately caused injury to plaintiffs and other class members' property

3   interests.

4   **D. Negligence Against MultiCare**

5        6.10     Plaintiffs re-allege the paragraphs set forth above and below.

6        6.11     Plaintiffs and the proposed class members received health care treatment from

7   MultiCare. As such, a special relationship exists between MultiCare and the plaintiffs and

8   proposed class. This special relationship created duties of reasonable care, which are owed by

9   MultiCare to Plaintiffs and the proposed class. Additionally, if IOD was acting as MultiCare's

10  agent, then its acts and omissions are imputed to MultiCare.

11       6.12     MultiCare has a duty to not improperly invoice and bill its patients for health care

12  information that has been properly requested pursuant to U.S.C.A. § 17935(e)(2) (2009); 45

13  C.F.R. § 164.524(c)(4) (2002).   Further, MultiCare should not be holding this health care

14  information hostage until the over inflated and improper invoices are paid.

15       6.13     The acts and omissions of MultiCare and IOD as described herein, and as will be

16  further developed in discovery, were negligent and in violation of its duty to exercise reasonable

17  care towards Plaintiffs and the proposed class members.

18       6.14     As a direct and proximate result, Defendants', MultiCare and IOD, unlawful and

19  improper health care production practices directly and proximately caused injury to plaintiffs and

20  other class members' property interests.

21

22

23

24

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 11 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA  98409
(253) 476-2653 | (253) 476-2298 fax

31

## I.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request a judgment against Defendants MultiCare and IOD:

1.      Class Certification.   A finding that this action should proceed as a class action under CR 23.

2.      Declaratory Relief.   A judicial declaration that the defendant's billing/invoicing practices when a patient requests health care information pursuant U.S.C.A. § 17935(e)(2) (2009); 45 C.F.R. § 164.524(c)(4) (2002) violates Washington law, and that all previous paid invoices falling within the class were unlawful invoices.

3.      Equitable Relief.   Equitable relief in the form of restitution and/or disgorgement of all money received by IOD and/or MultiCare as a result of the unlawful conduct alleged herein.

4.      Damages.   Damages in the amount to be proven at trial including but not limited to all monies improperly taken as a result of IOD's and/or MultiCare's conduct.

5.      Exemplary Damages.   Damages and such other relief, such as treble damages up to $25,000 per claimant under RCW 19.86.090.

6.      Punitive Damages against IOD.   For punitive damages against Wisconsin defendants IOD as allowed by Wisconsin law.

7.      Fees and Costs.   The costs of bringing this suit, including but not limited to reasonable attorneys' fees and costs under RCW 19.86.090 and RCW 19.16.440.

8.      For such other relief that the Court deems just and proper.

///

///

///

CLASS ACTION COMPLAINT
FOR DAMAGES
Page 12 of 13

WASHINGTON LAW CENTER, PLLC
15 Oregon Ave., Suite 210
Tacoma, WA  98409
(253) 476-2653 | (253) 476-2298 fax

32

1   ///

2   ///

3

4      DATED this 26th day of February, 2015.

5

6                                    WASHINGTON LAW CENTER, PLLC

7

8                                    _____
                                     Ashton K. Dennis, WSBA No. 44015
9                                    Attorney for Plaintiffs

10

11     DATED this 26th day of February, 2015.

12

13                                   PFAU COCHRAN VERTETIS AMALA, PLLC

14

15                                   _____
                                     Loren A. Cochran, WSBA No. 32773
16                                   Attorney for Plaintiffs

17

18

19

20  4821-6848-6178, v. 1

21

22

23

24

CLASS ACTION COMPLAINT                    WASHINGTON LAW CENTER, PLLC
FOR DAMAGES                                    15 Oregon Ave., Suite 210
Page 13 of 13                                      Tacoma, WA 98409
                                          (253) 476-2653 | (253) 476-2298 fax

33

# Exhibit 1



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Voice - (206) 615-2290, (800) 362-1710
TDD - (206) 615-2296, (800) 537-7697
(FAX) - (206) 615-2297
http://www.hhs.gov/ocr/

**OFFICE OF THE SECRETARY**

**Office for Civil Rights, Region X**
701 Fifth Avenue, Suite 1600, MS-11
Seattle, WA 98104

Date: **NOV 1 9 2014**

> **RECEIVED**
> **NOV 2 0 2014**
> CHEMNICK MOEN GREENSTREET

Anthony Armada
Chief Executive
Swedish Health Services
747 Broadway
Seattle, WA 98122

OCR Transaction Number: ▆▆▆▆▆

Dear ▆▆▆▆▆▆▆▆▆▆▆:

The U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), received a complaint from ▆▆▆▆▆▆ (Complainant) alleging that Swedish Health Services (Swedish) is not in compliance with the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the Privacy and Security Rules). Specifically, the Complainant alleged that he is the personal representative of his deceased father, ▆▆▆▆▆▆; on or about November 7, 2013, IOD, a business associate of Swedish, sent an invoice to Complainant for providing an electronic copy of his father's protected health information (PHI) that was not compliant with the copy fees permitted by the Privacy Rule. This allegation reflected a potential violation of 45 C.F.R. § 164.524(c)(4) (access of individuals to PHI - fees).

OCR enforces the Privacy and Security Rules and also enforces Federal civil rights laws that prohibit discrimination in the delivery of health and human services because of race, color, national origin, disability, age, and, under certain circumstances, sex and religion.

The Privacy Rule states that an individual has the right to access his/her PHI, maintained by a covered entity in a designated record set, for as long as the PHI is maintained in the designated record set (e.g., medical or billing records). *See* 45 C.F.R. § 164.524(a)(1). If an individual requests an electronic copy of that PHI, except under certain circumstances, a covered entity is required to provide the individual with such electronic copy to the extent it is readily producible. *See* 45 C.F.R. § 164.524(c)(2)(i) and (ii). A covered entity must act on the individual's request for access no later than 30 days after it receives the request. *See* 45 C.F.R. § 164.524(b)(2).

The Privacy Rule permits the covered entity to impose reasonable, cost-based fees to provide individuals (or their personal representatives) with access to their PHI. The fee may include only the cost of copying (including supplies and labor) and postage, if the patient requests that the copy be mailed. If the patient has agreed to receive a summary or explanation of his or her protected health information, the covered entity may also charge a fee for preparation of the summary or explanation. The fee may not include costs associated with searching for and retrieving the requested information. *See* 45 C.F.R. § 164.524(c)(4).

Additionally, if an individual's request for access directs the covered entity to transmit the copy of PHI directly to another person designated by the individual, the covered entity must provide the copy to the person designated by the individual. The individual's request must be in writing, signed by the individual, and clearly identify the designated person and where to send the copy of PHI. *See* 45 C.F.R. § 164.524(c)(3)(ii).

OCR notified Swedish of this complaint on December 20, 2013. In response to this complaint, Swedish conducted a review of the correspondence between Swedish, Complainant, and Complainant's attorney and determined that Swedish had failed to provide access as required by the Privacy Rule. Swedish concluded that, due to the inclusion of an attorney's letter, IOD staff had misinterpreted the request as an attorney request, and IOD had pre-billed the attorney using the Washington State allowable fees set forth by Washington State law. The IOD "PrePay Notice" dated November 7, 2013, provided by Complainant, reflected a charge of $624.51 for a hard copy page count of 654 pages, which included a "basic fee" of $24, a copy charge of $1.09 per page for pages 1 to 30, a copy of charge of $.82 per page for pages 30 to 654, plus sales tax and shipping.

In order to resolve the matter at issue, OCR provided substantial technical assistance to Swedish. Swedish agreed to clarify its individual access policies and procedures and amend its contract with IOD, stipulating that individual patients requesting access will be charged reasonable, cost based fees. Swedish revised its individual access copy fees to a) no cost for a hard copy of up to 10 pages, b) $.38 per page for hard copies after the first 10 pages, and c) $6.50 for a CD containing electronic PHI, regardless of the number of pages/images on the CD. Swedish amended its contract with IOD as of June 5, 2014 to reflect its revised individual access copy fees. Swedish retrained its staff members on its revised individual access policies and procedures and provided documentation of the retraining to OCR. Additionally, OCR confirmed that Swedish provided the requested records for no charge on a CD to Complainant's attorney, per the Complainant's request.

All matters raised by this complaint at the time it was filed have now been resolved through Swedish's voluntary compliance actions. Therefore, OCR is closing this case. OCR's determination as stated in this letter applies only to the allegations in this complaint that were reviewed by OCR.

Under the Freedom of Information Act, we may be required to release this letter and other information about this case upon request by the public. In the event OCR receives such a request, we will make every effort, as permitted by law, to protect information that identifies individuals or that, if released, could constitute a clearly unwarranted invasion of personal privacy.

If you have any questions regarding this matter, please contact Evelyn Zeller, of my staff, at 206-615-3869 (Voice), 206-615-2296 (TDD). When contacting this office, please remember to include the transaction number that we have given this file.

Sincerely,

Linda Yuu Connor
Regional Manager

cc:     Roger Leslie
        155 NE 100th St., Suite 400
        Seattle, WA 98125

# Exhibit 2

# PrePay Notice



**FIRST NOTICE**

Date Sent: 11/14/2014

**SECOND NOTICE**

Date Sent:

**LINDSEY COLON**
**WASHINGTON LAW CENTER**
**15 OREGON AVE STE 210**

**TACOMA, WA 98409-7464**

Patient: **DICKMAN, PAULINE**
SSN:
Claim/File #:
Order #: 35668633
Fax #: 253-476-2298

IMG WA1

Records requested from: **MULTICARE HEALTH SYSTEM**
Rec. Location: TACOMA GENERAL HOSPITAL

Dear Requester:

iod incorporated has been retained by the medical facility listed above to provide release of information services. It is our policy to require payment prior to delivering the requested information. **Please note this is an estimated fee, the final amount may differ.**

| Service dates requested | Specific Date(s): TG 7/8/09 TO PRES RECS & BILLS |
|---|---|
| Items requested | ALL |
| "PERT ITEMS" = Dictated notes, radiology reports, lab reports, special test results, etc. | |

| Description | Quantity | Unit Price | Extension |
|---|---|---|---|
| * Note: Hard Copy Page Count: 503 | 503 | $0.00 | $0.00 |
| Basic Fee $24.00 | 1 | $24.00 | $24.00 |
| Copy Charge $.82 Per Page 30 + | 473 | $0.82 | $387.86 |
| Copy Charge $1.09 Per Page 1-30 | 30 | $1.09 | $32.70 |
| Shipping | 1 | $12.35 | $12.35 |
| Sales Tax | 1 | $43.41 | $43.41 |

| Pages as per Request: | 503 | Fee Quote as per Request: | $ 500.32 |
|---|---|---|---|
| Notes: | | | |

The requested medical information will be provided after payment in full is received. Please make payment within 20 days of the first notice to avoid cancellation of your request. If the patient authorization has expired by the time payment is received, a new authorization will be required. Please note that it may take up to 15 business days from the date your request is received for your request to be processed. If you have any questions regarding this notice, please contact Customer Relations at 866-340-0767 Option 1 * Fax 425-462-7773.

- To make a payment online via credit card, go to payportal.iodincorporated.com
- To make a payment via credit card, you can also call Customer Relations at 866-420-7455 Option 1.

To make a manual payment, please send this form and your check or money order made payable to iod incorporated to the address shown below. PLEASE DO NOT SEND CASH!

*IOD Incorporated   TaxID No. 65-0765287*
*PO Box 19072 Green Bay, WI 54307-9072*
*Phone 866-420-7455 Option 1 * Fax 920-406-6537*

# Exhibit 3

# PrePay Notice



**FIRST NOTICE**

Date Sent: 11/14/2014

**SECOND NOTICE**

Date Sent:

LINDSEY COLON
WASHINGTON LAW CENTER   Acct: 234502
15 OREGON AVE STE 210

TACOMA, WA 98409-7464

Patient: DICKMAN, PAULINE
SSN:
Claim/File #:
Order #: 35668633
Fax #: 253-476-2298

IMG WA1

Records requested from: **MULTICARE HEALTH SYSTEM**
Rec. Location: TACOMA GENERAL HOSPITAL

Dear Requester:

iod incorporated has been retained by the medical facility listed above to provide release of information services. It is our policy to require payment prior to delivering the requested information. **Please note this is an estimated fee, the final amount may differ.**

| Service dates requested | Specific Date(s): TG 7/8/09 TO PRES RECS & BILLS |
|---|---|
| Items requested | ALL |
| "PERT ITEMS" = Dictated notes, radiology reports, lab reports, special test results, etc. | |

| Description | Quantity | Unit Price | Extension |
|---|---|---|---|
| * Note: Hard Copy Page Count: 503 | 503 | $0.00 | $0.00 |
| Basic Fee $24.00 | 1 | $24.00 | $24.00 |
| Copy Charge $.82 Per Page 30 + | 473 | $0.82 | $387.86 |
| Copy Charge $1.09 Per Page 1-30 | 30 | $1.09 | $32.70 |
| Shipping | 1 | $1.95 | $1.95 |
| Sales Tax | 1 | $42.42 | $42.42 |

| Pages as per Request: | 503 | Fee Quote as per Request: | $ 488.93 |
|---|---|---|---|
| Notes: | | | |

The requested medical information will be provided after payment in full is received. Please make payment within 20 days of the first notice to avoid cancellation of your request. If the patient authorization has expired by the time payment is received, a new authorization will be required. Please note that it may take up to 15 business days from the date your request is received for your request to be processed. If you have any questions regarding this notice, please contact Customer Relations at 866-340-0767 Option 1 * Fax 425-462-7773.

- To make a payment online via credit card, go to payportal.iodincorporated.com
- To make a payment via credit card, you can also call Customer Relations at 866-420-7455 Option 1.

To make a manual payment, please send this form and your check or money order made payable to iod incorporated to the address shown below. PLEASE DO NOT SEND CASH!

*IOD Incorporated   TaxID No. 65-0765287*
*PO Box 19072 Green Bay, WI 54307-9072*
*Phone 866-420-7455 Option 1 * Fax 920-406-6537*